# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | MDL NO. 3094<br><br>THIS DOCUMENT RELATES TO ALL CASES<br><br>JUDGE KAREN SPENCER MARSTON |
| THOMAS J. MEMMEN,<br>　　　　　　Plaintiff,<br><br>v.<br><br>NOVO NORDISK, INC.; NOVO NORDISK A/S; ELI LILLY and COMPANY; and LILLY USA, LLC,<br>　　　　　　Defendant(s). | COMPLAINT AND JURY DEMAND<br><br>CIVIL ACTION NO.: 2:25-cv-07392 |

## SHORT FORM COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff named below, by and through the undersigned counsel, files this *Short-Form Complaint and Demand for Jury Trial* against the Defendants selected below. Plaintiff adopts and incorporates by reference the allegations, claims, and the relief sought in *Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint")*, and any subsequent amended versions of such *Master Complaint*, filed in *In Re: Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Products Liability Litigation*, MDL No. 3094 in the United States District Court for the Eastern District of Pennsylvania, as it relates to the selected Defendants and Causes of Action. Plaintiff files this *Short-Form Complaint* as permitted by Case Management Order ("CMO") No. 27 (ECF 503).

1

## IDENTIFICATION OF PARTIES

**Plaintiff(s)**

1.    Full (first, middle, and last) name of Plaintiff injured/deceased due to use of GLP-1 RA Product(s): _____Thomas J. Memmen_____.

2.    If applicable, full name(s) and representative capacity of Plaintiff(s) alleging wrongful death claim: _____N/A_____, as _____ of the estate of _____, deceased.

3.    If applicable, full name(s) of Plaintiff(s) alleging survival claims, as permitted under state law(s): _____N/A_____.

4.    If applicable, full name(s) of Plaintiff(s) alleging loss of consortium or loss of services: _____N/A_____.


**Defendant(s)**

5.    Plaintiff is suing the following Defendants (check all that apply):

   __X__ Novo Nordisk Inc.

   __X__ Novo Nordisk A/S

   __X__ Eli Lilly and Company

   __X__ Lilly USA, LLC

   _____ other(s) (identify): _____

## JURISDICTION AND VENUE

6.     City and state of Plaintiff's current residence (or in a case brought on behalf of a Decedent, Decedent's last permanent residence):

Plaintiff is a citizen of the United States, a citizen of the State of North Carolina, and a resident of the city of Spindale, North Carolina.

7.     State where Plaintiff was prescribed the GLP-1RA Product(s) at issue:

Plaintiff's physician(s) prescribed Trulicity and Rybelsus that were used by Plaintiff in North Carolina.

8.     State of Plaintiff's residence at time of his use of the GLP-1RA Product(s) at issue:

Plaintiff  was a citizen of the State of North Carolina at the time of his GLP-1 RA use.

9.     City and state of Plaintiff's residence at time of diagnosis of injury:

Plaintiff resided in Spindale, North Carolina at the time of the diagnosis of his injur(ies).

10.    Jurisdiction is based on:

   X    diversity of citizenship pursuant to 28 U.S.C. § 1332

_____   other (plead in sufficient detail as required by applicable rules):

_____

_____

11.         The District Court(s) where Plaintiff might have otherwise filed this Short Form Complaint, absent this Court's CMO No. 14, and/or to where remand could be ordered:

United States District Court for the Western District of North Carolina

3

12.    Venue is proper in the District Court identified in Paragraph 11 because:

 X    a substantial part of the events and omissions giving rise to Plaintiff(s)' claims occurred there

_____    other (plead in sufficient detail as required by applicable rules):

_____

_____

13.    If applicable, identify the citizenship of any additional Defendant(s) named above:

N/A_____.

## **PRODUCT USE**

14.    Plaintiff/Decedent used the following GLP-1 RA Product(s) for which claims are being asserted in this case (check all that apply):

_____    Ozempic (semaglutide)

_____    Wegovy (semaglutide)

 X    Rybelsus (oral semaglutide)

_____    Victoza (liraglutide)

_____    Saxenda (liraglutide)

 X    Trulicity (dulaglutide)

_____    Mounjaro (tirzepatide)

_____    Zepbound (tirzepatide)

_____    Other(s) (specify): _____

4

15.     To the best of Plaintiff's knowledge, Plaintiff used GLP-1 RA Product(s) during the following approximate date range(s) (month(s) and year(s)) (if multiple products, specify date range(s) for each product):

> Plaintiff used Trulicity from in or about March 2020 through August 2021. Plaintiff used Rybelsus from in or about September 2021 through in or about February 2024.

## INJURIES AND DAMAGES

16.     To the best of Plaintiff(s)' knowledge, as a result of using GLP-1 RA Product(s), Plaintiff/Decedent suffered the following injuries, including their sequelae (check all that apply):

      __X__ Gastroparesis

      __X__ Other gastro-intestinal injuries (specify): Delayed gastric emptying            .

      _____ Ileus

      _____ Ischemic Bowel/Ischemic Colitis

      __X__ Intestinal Obstruction

      _____ Necrotizing Pancreatitis

      _____ Gallbladder Injury (specify):

      _____ Micronutrient Deficiency

      _____ Wernicke's encephalopathy

      _____ Aspiration

      _____ Death

      _____ Additional/Other(s) (specify): _____.

17.     Plaintiff's injuries occurred in approximately (month and year)?

> On or about December 30, 2022, and after having used both Trulicity and Rybelsus, Plaintiff was hospitalized. He was discharged January 4, 2023, with a small bowel

<u>obstruction diagnosis. In February 2023, a gastric emptying study was performed</u>

<u>due to abdominal extension and Plaintiff was diagnosed with gastroparesis.</u>

<u>Plaintiff suffered from delayed gastric emptying.</u>                                    .

18.    In addition, as a result of Plaintiff's use of GLP-1 RA Product(s), Plaintiff suffered

personal and economic injuries, pain and suffering, emotional distress, mental anguish, and the

following damages (check all that apply):

     X    Injury to self

_____ Injury to person represented

   X    Economic loss

_____ Wrongful death

_____ Survivorship

_____ Loss of services

_____ Loss of consortium

_____ other(s) (specify): _____

### CAUSES OF ACTION

19.    In addition to adopting and incorporating by reference the *Master Complaint* as

stated above, more specifically, Plaintiff hereby adopts and incorporates by reference the following

Causes of Action and allegations asserted in the *Master Complaint* (check all that apply):

   X    Count I:    Failure to Warn – Negligence

_____ Count II:    Failure to Warn – Strict Liability

   X    Count III:    Breach of Express Warranty/Failure to Conform to Representations

   X    Count IV:    Breach of Implied Warranty

   X    Count V:    Fraudulent Concealment/Fraud by Omission
<u>*See* Exhibit "A" regarding Count V</u>

6

  X    Count VI:    Fraudulent/Intentional Misrepresentation
                         *See* Exhibit "A" regarding Count VI

  X    Count VII:   Negligent Misrepresentation/Marketing

       Count VIII: Strict Product Liability Misrepresentation/Marketing

  X    Count IX:    Innocent Misrepresentation/Marketing

  X    Count X:     Unfair Trade Practices/Consumer Protection (see below)
                         *See* Exhibit "B" regarding Count X

  X    Count XI:    Negligence

  X    Count XII:   Negligent Undertaking

  X    Count XIII: State Product Liability Act ("TPLA") (see below)

       Count XIV: Wrongful Death

       Count XV:  Loss of Consortium

       Count XVI: Survival Action

       Other(s) (specify, and on separate pages, plead additional facts supporting any above claim in sufficient detail as required by applicable rules):

20.     If Plaintiff is asserting a claim pursuant to the unfair trade practices or consumer protection statutes of any jurisdiction as identified in Count X above:\*

         a.   Indicate the specific statute (including subsections) under which Plaintiff is bringing such claims:

North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") Chapter 75 of the North Carolina General Statutes governs the State's laws designed to protect consumers and businesses from unethical or fraudulent conduct in commercial transactions, provide remedies for victims of deceptive business practices, and aim to promote fair competition. Plaintiff brings claims under N.C. Gen. Stat. §§ 75-1.1, 75-16, 75-16.1. Additionally,

see Plaintiffs' *Master Complaint*, Count X, paragraphs 850-865. Defendants misled consumers and Plaintiff's physician(s) regarding the safety and risks associated with the use of their GLP-1 RA Product(s) by overstating the benefits and downplaying the risks from using their products. Plaintiff incorporates Exhibit "B."

b.  Identify the factual allegations supporting those claims (by subsection, if applicable):

Defendants misled consumers regarding the safety and risks associated with use of their GLP-1 RA Product(s) by overstating benefits and understating risks from using the Product(s). While various avenues were used by both Eli Lilly and Novo Nordisk, each of them promoted their GLP-1 RA Products direct-to-consumers through television commercials. One of the television commercials Plaintiff saw numerous times was Defendants' "Powerful Nurse" commercial which makes Trulicity's mode of action sound simple, natural, and positive with the "nurse" stating, "it gets my body to release insulin–like it's supposed to." The commercial does not cover the risks adequately as there is no mention of delayed gastric emptying and it does not adequately convey the seriousness of potential gastrointestinal injuries. Additionally, Plaintiff reviewed the Trulicity brochure that discusses "sustained weight loss of 52 weeks." Plaintiff saw television commercials promoting Rybelsus countless times wherein Novo Nordisk promoted its GLP-1 Product with themes of "Wake up & Rybelsus" and "A1C Down with Rybelsus," at the same time stating that people taking Rybelsus lost more weight. Plaintiff incorporates Exhibit "B."

*Plaintiffs asserting any such claims are on notice that "failure to identify [these claims] with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 74 n.33.*

21.    If Plaintiff is asserting a claim pursuant to the Product Liability Act ("PLA") of any jurisdiction as identified in Count XIII above:*

    a.    Indicate the specific statute (including subsections) under which Plaintiff is bringing such claims:

North Carolina Product Liability Act ("North Carolina PLA"), N.C. Gen. Stat. § 99-B. More specifically, Plaintiff brings claims under §§ 99B-1, 99B-1.1, 99B1.2, 99B-4, 99B-5, 99B-6.

    b.    Identify the legal theories identified in Paragraph 19 above (*e.g.*, negligent failure to warn, fraud, etc.) that are subsumed within Plaintiff's PLA claim:

N/A                                                                                              .

    c.    Identify the factual allegations supporting those claims:

Defendants as both sellers and manufacturers of the GLP-1RA Product(s) produced defective Product(s) that were unsafe and known to be unsafe to the ordinary consumer, and which Defendants knew could have been designed to be safer, and that would cause injury as produced and sold. Defendants also failed to provide adequate warnings or information with regard to their products and misled consumers, including Plaintiff, as well as consumers' physicians regarding the safety and risks associated with use of their GLP-1 RA Product(s) by overstating benefits and understating risks from using the Product(s). Plaintiff was prescribed Trulicity and Rybelsus. He was exposed to advertisements regarding the weight loss advantages of both GLP-1 Products which omitted and/or downplayed the risks of using the medication. Instead,

the marketing materials related to the Products included statements that promised weight loss and moderated risks. While various avenues were used by both Eli Lilly and Novo Nordisk, each of them promoted their GLP-1 RA Products direct-to-consumers through television commercials. One of the television commercials Plaintiff saw numerous times was Defendants' "Powerful Nurse" commercial which made Trulicity's mode of action sound simple, natural, and positive with the "nurse" stating, "it gets my body to release insulin–like it's supposed to." The commercial did not cover the risks adequately as there was no mention of delayed gastric emptying and it did not adequately convey the seriousness of potential gastrointestinal injuries. Additionally, Plaintiff reviewed the Trulicity brochure that discussed "sustained weight loss of 52 weeks." Plaintiff saw television commercials promoting Rybelsus countless times wherein Novo Nordisk promoted its GLP-1 Product with themes of "Wake up & Rybelsus" and "A1C Down with Rybelsus," at the same time stating that people taking Rybelsus lost more weight.

In addition, Plaintiff incorporates the following paragraphs from the *Master Complaint* (ECF 481) by reference:

Count I:    Failure to Warn – Negligence (paragraphs 606-640)

Count III:  Breach of Express Warranty/Failure to Confirm to Representations (paragraphs 675-698)

Count IV:  Breach of Implied Warranty (paragraphs 699-720)

Count V:   Fraudulent Concealment/Fraud by Omission (paragraphs 721-779)

Count VI:  Fraudulent/Intentional Misrepresentation (paragraphs 780-800)

Count VII: Negligent Misrepresentation/Marketing (paragraphs 801-824)

Count IX:  Innocent Misrepresentation/Marketing (paragraph 849)

Count X:   Unfair Trade Practices/Consumer Protection (paragraphs 850-865) (see below)

Count XI:  Negligence (paragraphs 866-880)

Count XII – Negligent Undertaking (paragraphs 881-903)

Count XIII: - State Product Liability Acts (paragraphs 904-911)

See also the Factual Allegations Section of the *Master Complaint*.

*\* Plaintiffs asserting any such PLA claims are on notice that "failure to identify the PLA claims with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 76 n.35.*

22.    If pre-suit notice is required by statute, did Plaintiff provide some form of separate pre-suit notice to Defendant(s)?   N/A   .  If so, attach such notice.

## **RELIEF**

Plaintiff prays for relief and judgment against Defendants of compensatory damages, punitive and/or exemplary damages, interest, costs, attorneys' fees, and such further relief as the Court deems equitable and just, and as set forth in the *Master Complaint*, as appropriate, and any additional relief to which Plaintiff may be entitled.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all claims triable by jury in this action.


Date: ___December 30, 2025___                By: _____

Kristie M. Hightower (LA Bar #31782
Lundy, LLP
501 Broad Street
Lake Charles, LA 70601
khightower@lundyllp.com
T: (337) 439-0707
F: (337)439-0707

*Counsel for Plaintiff*

# EXHIBIT A

**FRAUD SUPPLEMENT - COUNTS V & VI**

1.     Plaintiff incorporates by reference the factual allegations in the *Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial* (ECF 481) *("Master Complaint")*, including its paragraphs 721-779 (Count V) and 780-800 (Count VI), as though set forth fully at length herein.

2.     Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the GLP-1 RA Products used by Plaintiff.

3.     At all relevant times, Defendants had a duty to accurately and truthfully represent the known risks and benefits of their GLP-1 RA Products to Plaintiff and his prescribing physicians.

4.     Defendants knew or should have known their GLP-1 RA Products were unreasonably dangerous and had gastrointestinal adverse effects that were of a greater severity, intensity, frequency, and duration than represented.

5.     Defendants knew their representations regarding the drugs' safety, efficacy, and side-effect profile were material to the decisions of patients and prescribers.

6.     Despite this knowledge, Defendants intentionally and knowingly made false and material misrepresentations and concealed material facts with the intent to mislead and induce Plaintiff and his prescribing physicians to use and prescribe the GLP-1 RA Products.

**Count V: Fraudulent Concealment / Fraud by Omission**

7.     Defendants, having a duty to disclose, intentionally concealed and omitted the following material facts, thereby creating a false and misleading impression of the GLP-1 RA Products upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

a. Risk of GI Injuries: Concealing the true risk of persistent and debilitating gastrointestinal conditions, severe vomiting, and nausea, and cholelithiasis and the need for gallbladder removal.

b. Inadequate Gastric Emptying Tests: Concealing that representations of a "minor" gastric delay were based on inadequate testing (e.g., the acetaminophen absorption test, which only measures liquid emptying) and that Defendants knew or should have known this testing did not reflect the drug's true impact on solid food digestion.

c. Misleading Clinical Trial Data: Concealing the fact that clinical trial participants were frequently treated with anti-emetic medications (anti-nausea drugs) to manage GI side effects, thereby skewing the data and making the "mild to moderate" side effect profile reported in marketing materials false and misleading.

d. Misleading and/or Inadequate Data: Concealing the fact that if the use of Defendants' GLP-1 RA Product is discontinued, blood sugar levels will likely rise, and can even become higher than they were before starting the medication.

e. "Bogus" Weight-Loss Claims (Rebound Effect): Concealing that patients are highly likely to regain the weight after discontinuing the drug, and that maintaining any weight loss requires lifelong, continuous use of the medication.

f. "Bogus" Weight-Loss Claims (Muscle Loss): Concealing that a significant portion of the total weight lost is often lean muscle mass, not just fat, which

can lead to negative health outcomes.

8.      As a result of Defendants' fraudulent concealment and misrepresentations, Plaintiff suffered bodily injuries and economic and other losses, including pain and suffering, loss of a normal life, and medical expenses, and is entitled to recover compensatory, exemplary, and/or punitive damages. Plaintiff justifiably relied on Defendants' misrepresentations and omissions. Plaintiff was ignorant of the facts related to Defendants' Product(s) and did not have an equal opportunity to discover them. If Plaintiff had known the information Defendants withheld and concealed, Plaintiff would not have purchased or used the GLP-1 RA Products.

9.      As a result of Defendants' fraudulent concealment and misrepresentations, Plaintiff suffered bodily injuries and economic and other losses, including pain and suffering, loss of a normal life, and medical expenses, and is entitled to recover compensatory, exemplary, and/or punitive damages.

**Count VI: Fraudulent / Intentional Misrepresentation**

10.      Defendants made the following affirmative and material misrepresentations, which were false when made and upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

    a. Defendants made representations in widespread direct-to-consumer advertising (including television commercials and product websites) that patients using a Novo Nordisk GLP-1 RA could "lose weight and keep it off." These representations were false and misleading because Defendants knew and concealed the material facts that (1) patients are highly likely to regain the weight after discontinuing the drug, requiring lifelong use, and (2) a significant portion of the weight lost is often unhealthy lean muscle mass.

b.  Defendants made misrepresentations to the public and to Plaintiff by airing the widespread "Oh, Oh, Oh, Ozempic" television commercial, which falsely created a misleading impression of the drug's safety profile. Specifically, the commercial represented a character saying, "No increased risk!" which was an incomplete and misleading statement of safety that tended to assure viewers the drug was completely safe. Furthermore, while the commercial mentioned common gastrointestinal (GI) side effects like nausea and vomiting, it intentionally minimized the risk by failing to clarify the severe, incessant, and debilitating nature of these symptoms. Defendants concealed and omitted all mention of serious adverse events they knew or should have known to be associated with Ozempic use. These omissions created a deceptive net impression intended to induce consumers to request the product.

c.  Defendants' follow-up television commercials, which Plaintiff saw continued the "Oh, Oh, Oh, Ozempic!" brand theme as well as stating "no increased risk" creating a false sense of safety regarding the purchase and use of the GLP-1 RA Product(s).

d.  Defendants made representations to Plaintiff's prescribing physicians through sales representatives, medical websites (like NovoMedlink), and other physician-directed marketing that the most common gastrointestinal side effects, such as nausea and vomiting, were "mild to moderate" in severity and "transient" or of "short duration." These representations were false and misleading as Defendants concealed that these side effects were

often severe, debilitating, and persistent, and that clinical trial data was skewed by the undisclosed use of anti-emetic medications.

11.     Upon information and belief, Plaintiff's prescribing physician justifiably relied on Defendants' misrepresentations to the medical community, including the false claims that gastrointestinal side effects were merely "mild to moderate" and "transient." In parallel, Plaintiff justifiably relied on Defendants' widespread direct-to-consumer advertising, which falsely represented that the drug would help patients both treat diabetes and "lose weight and keep it off." Relying on this false and misleading net impression that Ozempic was a safe, effective, and long-term solution for diabetes and weight management with only minor and temporary side effects, Plaintiff's physician was induced to prescribe the drugs, and Plaintiff was induced to take them.

12.     Had Defendants disclosed the true risks of gastrointestinal injuries, the inadequacy of their safety testing, and the true, qualified nature of the long-term diabetes treatment and/or weight-loss benefits, Plaintiff would not have used the products, and/or Plaintiff's prescribing physician would not have prescribed it.

13.     As a direct and proximate result of Defendants' fraudulent misrepresentation and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in severe and personal injuries, physical pain, mental anguish, diminished enjoyment of life, as well as the need for medical treatment, and other damages, including those set forth in paragraphs 16 to 18 in the Short Form Complaint.

# EXHIBIT B

## UNFAIR TRADE PRACTICES / CONSUMER PROTECTION SUPPLEMENT

1.     Plaintiff incorporates by reference the factual allegations in *Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial* (ECF 481) *("Master Complaint")*, and its paragraphs 850-65 as though set forth fully at length herein.

2.     Plaintiff brings this claim against Defendants identified in paragraph 5 of the Short Form Complaint ("Defendants").

3.     Plaintiff brings this claim under the statute, and relevant subsections, identified in Paragraph 20(a) of the Short Form Complaint (the "Statute").

4.     The Oklahoma Consumer Protection Act ("Oklahoma CSPA" or the "Statute" ) prohibits deceptive, misleading, and unfair trade practices. Okla. Stat. Ann. tit. 15, § 753.

5.     Plaintiff and/or Defendants are "persons" under the Statute.

6.     Plaintiff is a consumer who purchased one or more GLP-1 RA Products for personal, family, and/or household purposes.

7.     Defendants are the suppliers, manufacturers, advertisers, and/or sellers of the GLP-1 RA Products, subject to liability under the Statute for fraudulent, unfair, deceptive, and unconscionable consumer sales practices.

8.     Defendants designed, manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed the GLP-1 RA Products into the stream of commerce, and therefore owed not only a duty of reasonable care to avoid causing harm to those that consumed it, such as Plaintiff, but also separate and independent statutory duties to be truthful, fair, accurate, and to not mislead or deceive consumers in connection with the sale of GLP-1 RA Products.

9.     Defendants marketed and advertised the GLP-1 RA Products to consumers, physicians, and other healthcare entities in Oklahoma. In addition, Defendants sold the GLP-1 RA Products to residents of Oklahoma; shipped GLP-1 RA Products to Oklahoma; and otherwise engaged in trade or commerce, or conducted business, related to the GLP-1 RA Products in Oklahoma. Defendants' misconduct described herein significantly affected Oklahoma consumers.

10.     As alleged in the Master Complaint, Defendants engaged in unfair competition or unfair, deceptive, misleading, false, fraudulent, or unconscionable acts or practices in violation of the Statute by, among other things:

     a.  Misleading consumers regarding the safety risks associated with use of their GLP-1 RA Products and overstating the weight-loss benefits and understating risks from using the GLP-1 RA Products;

     b.  Excessively advertising, marketing, and overpromoting their GLP-1 RA Products, including turbo-charging the pre-existing extensive direct-to-consumer marketing campaign with use of telehealth providers and promoting the drugs off-label; and

     c.  Failing to disclose that they performed research and testing in a manner that would lead to under-reporting of the severe risks of using the GLP-1 RA Products.

11.     As described in the *Master Complaint*, including in the paragraphs cited in paragraph 856 of the *Master Complaint* as well as paragraphs 447 through 576 of the *Master Complaint*, at all relevant times, Defendants knew or should have known, including from preclinical trials, premarket clinical trials, post-market surveillance, adverse event reports, and published scientific papers, that the GLP-1 RA Products posed serious health risks to users. Despite this knowledge, Defendants continued to mislead consumers by omitting, understating, or downplaying risks associated with use of their GLP-1 RA Products.

12.     As described in the *Master Complaint*, including in paragraphs 577 through 601 of the *Master Complaint*, at all relevant times, Defendants knew or should have known that their

GLP-1 RA Products are not as effective for weight loss as Defendants claimed. Despite espousing significant weight-loss benefits, Defendants knew that the average person loses only a small percentage of their body weight while on GLP-1 RA Products, a significant percentage of patients experience minimal to no weight loss, many people stop taking GLP-1 RA Products relatively quickly, and many people who discontinue use gain back as much as — or more than — the weight they lost while using the GLP-1 RA Products. Despite this knowledge, Defendants continued to mislead consumers by overstating the products' weight-loss benefits.

13.     The information referenced above that Defendants misrepresented, concealed, and did not disclose, was material. A reasonable person, including Plaintiff, would find that information, which was related to their health and well-being, such as the serious adverse health risks associated with the use of the GLP-1 RA Products and the limits of the products' efficacy, to be important when deciding whether to purchase and/or use the GLP-1 RA Products.

14.     Defendants intentionally concealed the foregoing material information from consumers, users, prescribers, physicians, and other health care providers, including Plaintiff and Plaintiff's health care providers, because to do otherwise would have resulted in fewer prescriptions written for, and fewer purchases of, the GLP-1 RA Products.

15.     Defendants violated the Statute by failing to disclose the material health and safety information regarding the GLP-1 RA Products discussed above to consumers, users, physicians, health care providers and others, including Plaintiff and Plaintiff's health care providers, in any of Defendants' marketing and promotional materials, advertising, packaging, labeling, websites, and/or any other public communication.

16.     Defendants violated the Statute by making numerous representations about the weight-loss benefits of taking GLP-1 RA Products while concealing additional information related

to the purported weight-loss benefits from consumers, users, physicians, health care providers and others, including Plaintiff and Plaintiff's health care providers, in any of Defendants' marketing and promotional materials, advertising, packaging, labeling, websites, and/or any other public communication.

17.    Defendants violated the Statute with their advertising tactics. Particularly Defendants' 2018 "Oh, oh, oh, Ozempic!" television commercial wherein an actor states "No increased risks" and viewed by Plaintiff numerous times.

18.    Defendants violated the Statute with their follow-up television commercials which continued the "Oh, Oh, Oh, Ozempic!" brand theme as well as stating "No increased risk" which Plaintiff viewed countless times over a period of years.

19.    Plaintiff, Jason M. Price, was prescribed metformin for treatment of his diabetes. After seeing Defendants' television commercials, Plaintiff, who was and is overweight, approached his physician, about trying Ozempic. Plaintiff's physician prescribed Ozempic and Plaintiff purchased and used Ozempic. Due to the gastrointestinal conditions Plaintiff suffered, including but not limited to abdominal pain, nausea and vomiting, and a small bowel obstruction, Ozempic was discontinued. Thereafter, Plaintiff began to regain weight.

20.    Defendants knew the misrepresentations, omissions and concealment of material safety and efficacy information in the GLP-1 RA Products' packaging, labels, advertisements, promotional materials, websites, and other communications and disclosures rendered them false, deceptive, inadequate, and misleading.

21.    By consistently and pervasively understating the risk and overstating the benefits of taking GLP-1 RA Products, Defendants engaged in unfair, deceptive, and/or fraudulent acts in violation of the statute by, among other things:

    a.   Making a false representation knowingly or with reason to know, as to the GLP-1 RA Products characteristics, uses, or benefits;

    b.   Representing, knowingly or with reason to know, that the GLP-1 RA Products are of a particular standard, when they are not;

    c.   Advertising, knowingly or with reason to know, the GLP-1 RA Products with intent not to sell them as advertised; and

    d.   Committing an unfair or deceptive practice as defined in Okla Stat. tit. 15 § 752.

Okla. Stat. Ann. tit. 15 § 752, 753(5), (8), (9) (21).

22.    In violation of the Statute, Defendants' conduct described herein constitutes the knowing and willful act, use, or employment of deception, false promise, misrepresentation, and unfair practices, and the concealment, suppression, and omission of material facts in connection with the sale and advertisement of goods, merchandise and/or consumer merchandise (*i.e.*, the GLP-1 RA Products), in trade or commerce, and was done with the intention that consumers such as Plaintiff would rely upon such conduct in purchasing or using the GLP-1 RA Products.

23.    Defendants' conduct was fraudulent and deceptive because the material misrepresentations and omissions had the capacity or tendency to deceive and, in fact, did deceive reasonable consumers, including Plaintiff.

24.    Plaintiff justifiably relied on Defendants' misrepresentations and omissions and if Plaintiff had known the information that Defendants withheld and concealed, Plaintiff would not have purchased or used the GLP-1 RA Products.

25.    As a result of such deceptive packaging, labels, advertisements, promotional materials, websites, and other communications and disclosures, Plaintiff purchased and/or used the GLP-1 RA Products in justifiable and reasonable reliance on Defendants misrepresentations and omissions.  Defendants expected or should have expected reasonable consumers to rely on

these misrepresentation and omissions, in part, because the omitted information directly relates to consumers' health and well-being.

26.     Plaintiff at all times acted as a reasonable consumer in relying upon Defendants' misrepresentations and material omissions concerning Defendants' GLP-1 Products in choosing to purchase and/or consume the GLP-1 RA Products prescribed by their health care provider.

27.     The actions and omissions of Defendants are uncured or incurable.

28.     As alleged above, Defendants had actual knowledge of the defective and dangerous condition of the GLP-1 RA Products and failed to take any action to cure those conditions.

29.     As a direct and proximate result of Defendants' misconduct described herein, Plaintiff has suffered serious injuries, economic and non-economic losses, and other damages, all of which can be calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence, including those set forth in paragraphs 16 to 18 in the Short Form Complaint.

30.     Accordingly, pursuant to the Statute, Plaintiff seeks to recover statutory, exemplary, treble, and/or punitive damages, costs of suit, and attorneys' fees, and equitable relief as appropriate, and all such other relief as the Court deems proper.